OPINION OF THE COURT
Robert G. Seewald, J.
In the first captioned proceeding (Index No. 22489/2002), petitioners seek to cancel the Democratic enrollment of Pedro Espada, Jr. based on a redetermination by the Chair of the County Committee of the Bronx Democratic Party, Carl E. Heastie. In accordance with a decision by the New York State Court of Appeals (98 NY2d 422 [Aug. 30, 2002]) this proceeding was remitted to this court with the direction to remit for redetermination to Chairman Heastie. The second captioned proceeding (Index No. 23852/2002) seeks to invalidate the designating petitions of Pedro Espada, Jr., as a Democratic candidate for the public office of Member of the State Senate, 32nd Senatorial District, Bronx County, in the Democratic Party primary to be held on September 10, 2002.
In an order to show cause brought by Pedro Espada, Jr. in opposition to the first proceeding herein set forth (Index No. 22489/2002), he seeks to stay or disqualify Chairman Heastie as the Chair of the County Committee of the Bronx Democratic *775 Party from rendering a determination based on his alleged apparent and actual bias against Pedro Espada, Jr., both personally and politically.
The proceeding to cancel the Democratic Party enrollment of Pedro Espada, Jr. was initially returnable in this court on July 17, 2002. Thereafter, oral argument was heard by this court on July 24, 2002 and further memoranda were submitted on August 1, 2002. On August 8, 2002, this court rendered a lengthy determination directing the Board of Elections to cancel Mr. Espada’s Bronx Democratic voter enrollment.
On appeal, the Appellate Division, First Department, reversed this court’s decision by a three to two majority (297 AD2d 251 [2002]). The petitioners subsequently appealed that decision to the Court of Appeals.
On August 30, 2002, the New York State Court of Appeals rendered a per curiam decision (98 NY2d 422 [2002]), which directed this court to remit the proceeding to the Chair of the County Committee of the Bronx Democratic Party for a redetermination. By order dated September 5, 2002, this court directed the petitioners to remit the matter to Chairman Heastie since Chairman Heastie was not named as a party to the proceedings. The court notes that on September 3, 2002, in a separate election proceeding, the proposed language of the aforesaid September 5, 2002 written order was read into the record. In addition, counsel for Mr. Espada presented a proposed order for the court’s consideration. After argument by both sides, respondent moved to dismiss the proceeding which seeks to cancel his enrollment (Index No. 22489/2002). The September 5, 2002 order of this court denied that request.
Two procedural issues were raised by respondent in opposition to these proceedings.
Initially, respondent contends that the Court of Appeals, in remitting the matter back to this court for remittal back to the County Committee Chair for a redetermination, required that a new hearing be held. Chairman Heastie did not conduct a new hearing. He issued a redetermination dated September 5, 2002, based upon a review of the entire record of the proceedings held before him on June 21 and 27, 2002. Chairman Heastie stated that he purged the record of all matters related to Senator Espada’s legislative acts, majority conference participation, evidence concerning internal workings of the Senate, and publications of the Senate, in accordance with the mandate of the Court of Appeals.
In this court’s view, Chairman Heastie’s actions in not conducting a new hearing were in compliance with the direc *776 tion of the Court of Appeals decision. The Court of Appeals clearly used the term “redetermination,” not “re-hearing,” thereby permitting a finding that Chairman Heastie acted in accord with its mandate. Accordingly, insofar as respondent’s application seeks a new hearing prior to a redetermination being issued on the grounds that same was required by the decision of the Court of Appeals, it is denied.
The second procedural issue concerns whether Chairman Heastie was required to give Pedro Espada, Jr., notice of the redetermination prior to rendering same. A written request for such notice was forwarded to the Chairman but apparently was not honored.
A review of the determination issued by Chairman Heastie reveals that he relied only on the evidence originally presented at the hearing. As noted earlier herein, Chairman Heastie purged from the record that evidence which the Court of Appeals required be purged and specifically detailed the evidence which he considered in rendering his redetermination. As a consequence thereof, counsel had an opportunity at the hearing to raise any and all objections to each and every item sought to be considered by the Chairman. Under the circumstances, the requirements of due process do not mandate that the respondent be given further notice and an additional opportunity to be heard. Accordingly, insofar as the application seeks a rehearing based on the failure to serve notice, the application is denied.
A jurisdictional objection was raised in connection with these proceedings. It is argued that a necessary party was omitted from the remitted proceeding. The New York State Senate, although not an original party to these proceedings, sought, and was granted permission, to intervene at both the Appellate Division and Court of Appeals. The question thus becomes whether the intervenor becomes a necessary party on the redetermination and ensuing order to show cause made to this court. It should be noted that neither party noticed or served the intervenor herein.
Ordinarily, an intervenor is entitled to notice of the proceeding. In the instant matter, the intervenor sought to protect a legislator’s rights under the Speech or Debate Clause of the New York State Constitution (art III, § 11). Upon redetermination, since all items with respect to the Speech or Debate Clause have been purged, there does not appear to be any interest to be represented by the intervenor. In any event, the court finds the failure to notice the intervenor is not a *777 jurisdictional defect. It is apparent that all parties were aware of these proceedings and the intervenor had an opportunity to represent the legislative interest. Accordingly, the application to dismiss these proceedings based on the failure to notice the intervenor is denied.
The respondent also seeks to stay or disqualify Chairman Heastie based upon his alleged bias.
In the prior proceedings before this court, the issue of the bias of Chairman Heastie was raised based on several factors including a statement made to the New York Times on June 7, 2002 (Rivera v Espada, Sup Ct, Bronx County, Aug. 8, 2002, Index No. 22489/2002). In this court’s decision of August 8, 2002, it was recognized that there was a built-in intra-party bias in having the Chair of the County Committee decide such matters pursuant to Election Law § 16-110 (2). This statute is clear in its directive that the authority to make such determination is specifically vested in the County Committee Chair of the affected political party. In fact, the New York State Court of Appeals, in its decision of August 30, 2002, directed that this proceeding be returned by this court to Chairman Heastie for his redetermination. Neither appellate court discussed the issue of the Chair’s bias.
In the hearing before this court on September 6, 2002, Mr. Heastie was called as a witness by respondent Espada on the issue of bias in his redetermination. His testimony as summarized below has been accepted as credible.
Initially, the respondent requested that Mr. Heastie produce the records which were directed to be produced in the order to show cause. Mr. Heastie indicated that these records were not in his personal possession, that they were not readily accessible, and that they were not produced.
Mr. Heastie stated that he is Chairman of the Bronx Democratic County Committee. He is also a Member of the Assembly; however, his district is not part of the 32nd Senatorial District which Senator Espada represents. In his capacity as Chair of the County Committee, it was Mr. Heastie’s responsibility to make a redetermination with respect to the cancellation of Mr. Espada’s enrollment. (Matter of Rivera v Espada, 98 NY2d 422.)
Mr. Heastie testified concerning the original determination. He indicated that when he received the initial demand from the complainants he reviewed the demand with his legal advisor, Jose Rodriguez. Among the things considered was the *778 issue of bias. Mr. Heastie could not recall, however, if he was asked about his relationship with the Espadas. With respect to the issue of bias, Mr. Heastie stated that he “had confidence in myself.”
The witness testified concerning his relationship with Ruben Diaz, Jr., and Peter Rivera, indicating that they were colleagues and that he had a personal relationship with Ruben Diaz, Jr. The court notes that Ruben Diaz, Jr. and Peter Rivera were witnesses in the underlying hearing. Mr. Heastie also testified concerning his endorsement of Ruben Diaz, Sr. and his financial support of that candidacy which occurred prior to both the Court of Appeals decision on August 30, 2002 and his redetermination in this matter. Mr. Diaz was substituted as an opposition candidate to Senator Espada for the Democratic Primary to be held on September 10, 2002.
Mr. Heastie identified his name on campaign literature that was circulated in support of Senator Espada’s opposition, Ruben Diaz, Sr.
Mr. Heastie also testified concerning the people who were involved in the original hearing and determination. At the initial hearing, Mr. Heastie had Jose Rodriguez as his legal advisor and Howard Vargas as clerk. Mr. Heastie indicated that Mr. Vargas wrote the script for the hearing.
With respect to the compilation of the original determination, Mr. Heastie testified that once he decided the issue of whether Mr. Espada’s enrollment should be cancelled, he went to Mr. Vargas to “put the legal language together.”
With respect to the compilation of the redetermination, he testified that after receiving a copy of the Court of Appeals decision, Mr. Vargas assisted him in “crafting” and drafting the redetermination. Mr. Heastie stated that he discussed the re-determination with Mr. Vargas and asked him about the Speech or Debate issue.
At the conclusion of Chairman Heastie’s testimony both sides rested.
The parties then proceeded to closing arguments. The petitioners’ counsel stated that Mr. Vargas is the Executive Director of the Democratic County Committee and contended that his role in crafting a recommendation is within his role of the County Committee and is not inappropriate in carrying out that role.
In examining the testimony elicited from Mr. Heastie on direct, cross, and redirect examination, a serious legal issue has been raised for this court’s consideration.
*779 In his redetermination, Chairman Heastie complied with the Court of Appeals decision by purging all material protected by the Speech or Debate Clause. This court may well have found the redetermination to be just, and may well have directed that Mr. Espada’s Democratic enrollment be canceled; however, the serious issue raised by Mr. Heastie’s testimony as to co-counsel’s role in the redetermination process bars that conclusion. Cocounsel for the petitioners in this proceeding was called upon to craft and draft the redetermination. Even though the ultimate result may have been reached solely by Mr. Heastie, such a marked conflict of interest cannot be ignored. No court can rule that a determination is “just” when it has been crafted and drafted by counsel who represents a party to that very proceeding. Chairman Heastie undertook the responsibility of making a redetermination, which he did, but such redetermination, crafted by a partisan to the proceeding, cannot be considered “just.”
Cocounsel for petitioner, who Chairman Heastie testified helped craft and draft the redetermination, has appeared in this court at each stage of the proceedings. At oral argument on July 24, 2002, cocounsel submitted an affirmation regarding the contact person listed on the designating petition of Pedro Espada, Jr., as well as information contained on the Republican Web site.
The fact that cocounsel is the Executive Director of the Bronx Democratic Party Committee and holds other party positions does not confer anymore rights when he appears, as he did before this court, as cocounsel for one side as against the other. No court in our system of jurisprudence could, in good conscience, permit counsel for one party to craft and draft a determination affecting the rights of the other party.
Limiting the record, as purged by the County Committee Chair, to statements and conduct not sheltered by the Speech or Debate Clause, may well justify a finding that respondent Espada was out of sympathy with the principles of the Democratic Party. The Court of Appeals, in Matter of Rivera v Espada (supra), has held that the proper finder of fact, pursuant to the provisions of Election Law § 16-110 (2), is the County Committee Chair and not the trial or appellate court. Further, Election Law § 16-110 (2), “limits courts to deciding whether this determination is just.” (Id. at 428.) The conclusion is unavoidable that the chairperson’s redetermination process was so tainted with improper and biased activities that his redetermination simply cannot be adjudicated as “just.” These activi *780 ties included the apparent bias inherent in the financial contribution and endorsement of an opposing candidate during the pendency of these proceedings, as well as the impropriety in the drafting of the redetermination as aforesaid.
This court is cognizant of Chairman Heastie’s legitimate involvement in the politics of the matter while he is authorized by statute to determine whether Mr. Espada is in sympathy with the principles of the Democratic Party.
Notwithstanding this, the court must insure an appropriate standard of fairness in the process and not merely rubber stamp the result. Here the line has been crossed. It surely offends this court’s sense of fairness to allow counsel for a litigant to craft and draft the opinion of the decisionmaker, ex parte no less, however much the court might agree with the ultimate determination.
The acts of crafting and drafting a decision by a partisan attorney are so inextricably interwoven with the decisionmaking process itself, that the attorney’s thoughts and conclusions cannot objectively be separated from those of the decision-maker himself, despite all good intentions.
Accordingly, petitioners’ application to cancel the Democratic enrollment of Pedro Espada, Jr. is denied.
The application to invalidate the designating petition of Pedro Espada, Jr. as a candidate for Member of the State Senate, 32nd Senatorial District, in the Democratic Primary to be held September 10, 2002 is also denied by virtue of this decision.
The application by respondent to stay or disqualify Chairman Heastie is decided in accordance with this decision.